NEW YORK, CHICAGO AND ST. LOUIS R. R. CO. v. FRANK SCHAFFER.

1. DUTY OF RAILROAD COMPANY TO GIVE A "CLEARANCE" TO DISCHARGED EMPLOYEE, AND EFFECT OF REFUSAL TO DO SO.

Where railroad companies mutually agree that they will not employ any workingmen who may have been discharged from or may have quit the service of any of the companies, parties to such agreement, unless the applicant shall present a consent from the parties for whom he last worked, or a "clearance" showing that he did not engage in a certain strike, it becomes the duty of a company, party to such agreement, upon the discharge of an employee who did not engage in such strike, upon his application therefor, to furnish to him evidence of its consent to his employment by such other company, or a "clearance" card showing that he did not engage in such strike; and a failure to do so, whereby such person is prevented from obtaining employment with such other company, constitutes an actionable wrong, and compensatory damage may be recovered therefor; and if such consent or letter shall be withheld maliciously, exemplary damages may be awarded.

2. WITHHOLDING CLEARANCE CARD, AMOUNTS TO PROSCRIPTION OF EMPLOYEE.

Such agreement amounts to a proscription of all workingmen who do not hold such evidence of consent, or such clearance card, and the refusal of a company to give a consent or a card amounts to a declaration to the other companies to which any man may apply for employment, that he is one of the proscribed class.

3. WHEN REFUSAL TO GIVE "CLEARANCE" CARD, AMOUNTS TO A FALSE REPRESENTATION.

Where the arrangement between the companies is such that failing to give evidence of consent or a clearance card, amounts to a representation that the person to whom it is refused belongs to a class not to be employed, whereas in fact, such person does not belong to that class, the representation is false, wrongful and actionable.

4. SUCH REFUSAL IS ACTIONABLE, IF PREVENTS PERSON FROM OBTAINING EMPLOYMENT.

> The wrong is similar in nature to slander of one respecting his avocation or calling. Such false representation need not, however, amount to slanderous utterances. It is sufficient if their effect is to prevent a person from obtaining employment.

PARKER, J.

This action was tried in the court below upon the second amended petition filed by the defendant in error, (plaintiff below), and the answer and the reply making up the issues.

There are two causes of action set forth in the second amended petition, but one of them was dropped out on the trial, and the case was tried on the second cause of action.

The petition is somewhat lengthy and contains a number of averments which seem to us to be repetition and others which are immaterial. The substance of what we deem material is as follows:

The petition sets forth that the "defendant is a railroad corporation organized under the laws of the State of Ohio, operating a railroad. That prior to the first day of January, 1895, plaintiff was in the employ of the defendant performing the work of a brakeman at the rate of $60 a month; that he had been a railroad employe for about twenty years; that he was, at the time of the grievance complained of, still a railroad man of good habits, well qualified on account of his having had experience and the qualifications to engage in the business of a roadroad brakeman; and he says that during the year 1894, there was on a great many of the railroads in the United States, including the defendant, a strike known as the A. R. U. strike. That during all the time of this strike, to-wit, the summer of 1894, he was working for the said defendant company as a brakeman in its yards at Bellevue, Ohio; that he took no part in said strike; that he worked for said defendant during the entire time up to about the latter part of December, 1894, as above set forth, when he was granted a leave of absence by said company. That prior to the expiration of said strike, defendant entered into a conspiracy, agreement and understanding with certain other railroad companies having lines of railroads running into the city of Chicago, and also with other railroad companies in the United States, the names of which are unknown to the plaintiff, that they, the said railroad companies, would furnish each to the other information as to all their employees who had committed offenses, or who were charged with having committed offences, and also as to all their employees who had quit work during said strike, which commenced on or about June 26, 1895, and ended on or about August 6, 1895, and as to all their employees who were members of the American Railway Union, and that such employees of any and all said companies would not be employed by any of said companies which formed the said conspiracy without a release and consent from the railroad company by which any such employee was last employed, said release or consent being commonly called by railroad men a "clearance." That such compact amounted to a conspiracy and agreement to blacklist and boycott said employees, the object and purpose thereby being to maliciously and willfully interfere with such employees as had previously terminated their employment with, or been discharged from the employment of either of the said companies.

Then follow averments as to the custom of the defendant company to grant such letters to its employees leaving its service, all of which we deem immaterial.

Then follows the averment that said defendant, although making said agreement and although well knowing that this plaintiff was not engaged in said strike, refused to give its consent to his being employed by other companies to which he applied for employment and refused to furnish him the "clearance" above mentioned, and then and thereby prevented him from obtaining employment.

That since said conspiracy of said railroads as above set forth, it is impossible for any one to secure employment unless he first presents the consent of the company for whom he last worked, or a clearance card showing that the applicant was in no way connected with said strike. That he has repeatedly asked the proper officers of said company for such consent or "clearance," and said company has failed and refused to furnish him therewith, although well knowing that it would be impossible for him to secure employment without the same.

"Plaintiff says that since his said discharge as above set forth, he has made application for employment to various railroad companies in the country and he says that said railroad companies have refused to consider his application unless he would first bring the consent of the defendant or a clearance above described."

"That because of the failure and refusal of the defendant to grant its consent or to furnish to him such clearance, and for no other cause, he has been denied the right to contract for and obtain employment with any of the railroad companies of the United States, and has been prevented from obtaining employment, and has been prevented from supporting himself and those dependent upon him by his said trade or occupation in which he has been engaged a great many years and that he is therefore damaged and injured by said willful, malicious and illegal acts of the defendant, and he prays for judgment in the sum of fifteen thousand dollars.

An answer was filed by the railroad company admitting its corporate capacity; that it was operating a railroad as alleged, and that the plaintiff had been in its employ for some period; but all the material averments of the petition upon which the right to recover is based are denied.

No demurrer was filed to this petition, but when the case came on for trial to the jury, objection was made to the introduction of any testimony under the petition, upon the ground that it did not state facts sufficient to constitute a cause of action. This objection was overruled, and the case went to trial resulting in a verdict for the plaintiff below for five thousand dollars.

A motion for a new trial upon various grounds was overruled and the case is brought here for our review.

The discussion before us has taken quite a wide range, but we consider it sufficient to give our conclusions briefly, and they are that, where railroad companies mutually agree that they will not employ any workingmen who may have been discharged from or may have quit the service of any of the companies, parties to such agreement, unless the applicant shall present a consent from the parties for whom he last worked, or a "clearance" showing that he did not engage in a certain strike, it becomes the duty of a company, party to such agreement, upon the discharge of an employee who did not engage in such strike, upon

his application therefor, to furnish to him evidence of its consent to his employment by such other company, or a " clearance " card showing that he did not engage in such strike ; and a failure to do so, whereby such person is prevented from obtaining employment with such other company, constitutes an actionable wrong, and compensatory damage may be recovered therefor; and if such consent or letter shall be withheld maliciously, exemplary damages may be awarded. Such agreement amounts to a proscription of all workingmen who do not hold such evidence of consent, or such clearance card, and the refusal of a company to give a consent or card, amounts to a declaration to the other companies to which a man may apply for employment, that he is one of the proscribed class.

We do not pass upon the question which has been discussed by counsel, as to whether such companies may lawfully combine to prevent any class of workingmen, for instance, such as are engaged in a certain strike, from obtaining employment with any company entering into such a compact; or whether they may agree not to employ a certain man or class of men for any cause reasonable or unreasonable, or for no cause at all ; but where the arrangement between the companies is such that failing to give evidence of consent or a clearance card, amounts to a representation that the person to whom it is refused belongs to a class not te be employed, whereas in fact, such person does not belong to that class, the representation is false, wrongful and actionable.

The wrong is similar in nature to slander of one respecting his avocation or calling. Such false representations need not, however, amount to slanderous utterances. It is sufficient if their effect is to prevent a person from obtaining employment.

As to the serious consequences of such interference with the right of one to obtain employment, we quote with approval the language of Judge Pratt in the case of William Mattison v. The Lake Shore and Michigan Southern Ry. Co., 3 Ohio Dec., 526, 531.

" It is said in Pollock on Torts, speaking of the right to employment by an employe that it is the most serious right affecting the laboring man's life. Now, it seem to me—with all due deference, of course, to the opinions of the courts which are adverse—that the employe's right to employment 's equally sacred with the right of the employer to employ him ; it is not only a serious right, affecting a man's life, but you may say that it is his life. The laboring man's employment is the only thing that stands between him and starvation, or what is very little less than starvation—pauperism—and it is for the public interest and for the public good that the right of a man to seek his own employment in any honest work which he may seek, should not be interfered with or violated."

Without entering upon a discussion of the evidence in this voluminous bill of exceptions, we simply state that from its examination we conclude that such a case as we say gives a right of recovery is stated in the plaintiff's petition and is fairly established by the evidence.

We find no error in the record, and the judgment of the court of common pleas will be affirmed.

*Vickery Bros.*, for plaintiff.

*S. E. Williamson* and *C. P. Wickham*, for defendant.